RENDERED: OCTOBER 14, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0423-MR

ERIC MATTHEW ILES                                         APPELLANT

                   APPEAL FROM GRANT CIRCUIT COURT
v.                HONORABLE R. LESLIE KNIGHT, JUDGE
                     ACTION NO. 00-CI-00058

ANGELINA LYNN ILES AND
COMMONWEALTH OF KENTUCKY                         APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, L. THOMPSON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Eric Mathew Iles[1] appeals from the Grant Circuit Court's order finding him in contempt and sentencing him to 30 days in jail for failure to pay child support. We affirm.

---

[1] This appeal was taken in the name of Eric Mathew Iles; however, the record begins referring to the appellant as "Eric Deck formerly Eric Iles" beginning in July, 2015. We will refer to him as Iles throughout.

On April 11, 2000, Iles was ordered to pay child support in the amount of $66.84 per week for his minor child, who was born in 1998. On August 3, 2000, the Commonwealth filed its first motion to hold Iles in contempt for failure to pay child support. By order entered on November 13, 2000, Iles was found in contempt and ordered to show cause why he should not be incarcerated for thirty days.

On December 14, 2000, a new child support order was entered setting child support at $290.32 per month and requiring an additional $40 per month to be paid towards his accumulated arrearage of $6,917.77.

On March 5, 2003, an agreed order was entered indicating Iles no longer owed an arrearage but was to continue to pay child support.

The record does not show any activity thereafter until July 13, 2015, when a motion was filed to hold Iles in contempt for failure to pay. This motion stated that Iles had not made a child support payment since May 30, 2015, and he was now $35,673.96 in arrears. The Domestic Relations Commissioner (DRC) confirmed that amount and set a show cause date for August 26, 2015, in a recommended order entered on August 3, 2015.

At the show cause hearing on August 26, 2015, Iles appeared *pro se* and informed the circuit court that he currently had custody of the child. The circuit court ordered that his monthly child support obligation be suspended but

recognized that such would not affect the arrearage which was still owed. The circuit court found Iles in contempt and ordered him to serve ten days in jail on weekends. However, Iles did not serve any time as on September 16, 2015, a new agreed order modifying child support was entered which suspended the current child support obligation but ordered Iles to pay $76.84 per week towards the arrearage, which was now calculated as $35,690.80.

The circuit court also suspended Iles's ten-day sentence with the caveat that "if Defendant should fail to pay as ordered herein, he shall serve the 10 (ten) days previously ordered in addition to any sentence imposed in the future for contempt." Iles personally signed the agreed order.

A year later, on October 13, 2016, a motion was filed to again hold Iles in contempt for failure to pay child support alleging that the last payment Iles had made was on May 25, 2016. His arrearage, however, was now down to $32,540.92.

The DRC conducted a hearing on October 19, 2016, with Iles again appearing *pro se*. Iles testified that he had been incarcerated since December of 2015 and had only been released on August 1, 2016. Iles also stated that he was now employed and provided the name of his employer. Upon that information, the Commonwealth decided to remand its motion and only refile if Iles did not pay on his arrearage obligation in the amount of $74.86 per week.

Almost a year later, on August 24, 2017, another motion for contempt was filed alleging that Iles had not made a payment towards his arrearage since March 23, 2017, and that his arrearage was $31,225.30 as of July 31, 2017. The DRC attempted to conduct a hearing on September 20, 2017; however, Iles was not present and it was discovered that mail to him had been returned to the Commonwealth.

Almost two years later, on May 24, 2019, the Commonwealth filed another motion for contempt against Iles. A hearing was held before the DRC on June 5, 2019. Again, Iles was not present. Nothing had changed since the prior abortive hearing in 2017. Iles had not made a payment since March 23, 2017. The DRC recommended 10 days in jail, a purge amount of $2,000, and ordered Iles to appear before the circuit court on July 24, 2019, to show cause why sanctions should not be imposed.

Iles did not appear at the July 24, 2019, hearing. The Commonwealth stated that mail sent to him had not been returned and that he was not currently in jail. However, the notice of the hearing mailed to Iles was later returned to the Grant Circuit Court Clerk on August 26, 2019.

Not knowing that Iles had not been served, and it having been shown by the Commonwealth that he was in violation of the prior agreed order, the circuit court issued a bench warrant for his failure to appear and set the bond as the

current amount of his arrearage owed of $31,225.30. The bench warrant was signed on July 29, 2016, but Iles was not taken into custody until December 13, 2019.

On January 15, 2020, the circuit court appointed counsel for Iles and scheduled his contempt hearing for January 29, 2020. Iles remained in jail until the hearing. The circuit court found Iles in contempt for failure to pay, gave him credit for time served, released him with orders to make his $76.84 per week payments and to report any future address or employer changes. Additional facts from this contempt hearing will be discussed as they become relevant.

Iles appealed, arguing that his due process rights were violated when: (1) the circuit court did not appoint him counsel prior to his being jailed; and (2) the circuit court did not conduct an inquiry into his ability to pay child support.

First, we address the Commonwealth's argument that the issue is moot given that even were this Court to vacate the circuit court's trial order, Iles has already served his sentence for contempt. The general rule that moot cases must be dismissed is subject to the "capable of repetition, yet evading review" exception.

> Two elements must be present for the capable-of-repetition-yet-evading review exception to apply: (1) the challenged action must be too short in duration to be litigated to completion prior to its expiration; and (2) a reasonable expectation must exist that the same party will be subject to the same action again.

*C.S. v. Commonwealth*, 559 S.W.3d 857, 865 (Ky.App. 2018).

In *C.S.*, the Court chose to apply this exception as both grounds were satisfied. We agree that the first ground applies to Iles since "[c]ontempt orders . . . are often of very limited duration." *Id.* As to the second ground, given Iles's history of only sporadic compliance with the circuit court's orders, coupled with the size of his arrearage, we have a reasonable expectation that these same issues could arise again.

A trial court has broad authority to enforce its orders, and contempt proceedings are part of that authority. *Lewis v. Lewis*, 875 S.W.2d 862 (Ky. 1993). We review a circuit court's exercise of its contempt powers for abuse of discretion. *Id.* at 864. In general, the courts also enjoy broad discretion "in the establishment, enforcement, and modification of child support." *Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010). Furthermore, Kentucky Revised Statute (KRS) 403.240 provides that a party's noncompliance with a support or custody decree "shall constitute contempt of court[.]" We apply the clear error standard to any underlying findings of fact. *Blakeman v. Schneider*, 864 S.W.2d 903 (Ky. 1993).

Iles's first argument, that he should have been appointed counsel prior to his incarceration, is without merit. There is no authority cited for the proposition that the circuit court had to first appoint counsel to Iles before it could enter a bench warrant for his failure to appear. It was Iles's own failures which led

to the issuance of a bench warrant and his incarceration. Iles failed to advise either the circuit court, Commonwealth's Attorney, or child support office of his changed address. He failed to make payments in accord with the 2015 agreed order which had conditionally suspended his prior sentence. And, lastly, he failed to appear before the court.

It is important to note that Iles had already been found in contempt and ordered to serve ten days in jail in 2015. Iles did not serve that sentence due to the later entry of the September 16, 2015, agreed order which suspended Iles's sentence conditioned on his paying support as ordered. It is undisputed that Iles did not make payments in accord with the 2015 agreed order and was therefore subject to serve not only his original ten-day sentence, but also serve any future sentence.

After he was taken into custody, the circuit court properly appointed counsel to Iles prior to his January 29, 2020, contempt hearing and he was represented throughout that hearing. This was not a circumstance where Iles was found in contempt, sentenced, and incarcerated all while indigent and without the benefit of counsel. *See Lewis*, 875 S.W.2d at 864.

Iles's second argument is "there was no inquiry into his present ability to pay child support." Our review of the entirety of the contempt hearing clearly shows that there was no error or abuse of discretion on the part of the circuit court.

The legal arguments asserted by Iles simply do not correspond with what actually occurred.

It is true that contempt cannot be used to compel the doing of an impossible act. *Rudd v. Rudd*, 184 Ky. 400, 214 S.W. 791 (1919). This applies equally to child support matters. In *Clay v. Winn*, 434 S.W.2d 650 (Ky. 1968), it was held that a father delinquent in his child support payment, but financially unable to pay, had a valid defense to contempt.

In *Lewis*, it was specifically determined that the trial court must hold a hearing where the contemnor is "entitled to present what evidence they had concerning their ability or lack of ability to pay or otherwise satisfy the judgment." *Lewis*, 875 S.W.2d at 865. Furthermore, if the contemnor is not represented by counsel at such a hearing, then the trial court should make a specific finding of fact concerning the person's indigency. *Id.* Here, Iles was represented by counsel negating the necessity of a "specific finding of fact" regarding his ability or inability to pay. Additionally, as discussed more specifically below, the record of the contempt hearing confirms the presence of the necessary substantial evidence supporting the circuit court's finding of contempt.

In his brief, Iles argued that "the trial judge swore Mr. Iles in and asked if the arrearage testified to by the cabinet was accurate and if he had failed to pay it. Mr. Iles was not given an opportunity to speak further and was immediately

held in contempt." However, this representation of facts is simply incomplete. Iles had already been given an opportunity by the circuit court to testify. He did not avail himself of such opportunity and was not called by his counsel to testify.

In civil contempt proceedings, the initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order. *See Roper v. Roper*, 242 Ky. 658, 47 S.W.2d 517 (1932). Here, the Commonwealth proved Iles's obligation through the record, including the 2015 agreed order signed by Iles. His failure to pay, and the amount of his unpaid arrearage, were proven by the testimony of a sworn employee of county child support office. Neither Iles nor his counsel disputed his obligation or his failure to pay.

Once a moving party makes out a *prima facie* case, as the Commonwealth did here, a presumption of contempt arises, and *the burden of production shifts* to the alleged contemnor to show, clearly and convincingly, that he was unable to comply with the court's order or was, for some other reason, justified in not complying. *Clay*, 434 S.W.2d 650. This burden is not satisfied by mere assertions of inability. *Dalton v. Dalton*, 367 S.W.2d 840 (Ky. 1963). The alleged contemnor must offer evidence tending to show clearly that he or she made all reasonable efforts to comply. *Id.*

Neither Iles nor his counsel ever sought to argue an inability to pay. In fact, Iles's counsel did not call him to testify. In lieu of his testimony, Iles's counsel asserted *not* that her client could not pay, but that her client had been "under the impression that the obligation had ended." Counsel never explained how he came to that conclusion or why he believed the 2015 agreed order which he had personally signed was no longer in effect. The closest Iles came to offering inability to pay as a defense was his counsel's other assertion that he had been in jail for a year in 2017 and was on parole. The circuit court informed Iles's counsel that "[y]ou've made an argument but I don't have any evidence from your side." The circuit court finally placed Iles under oath and, upon questioning by the court, Iles testified that he had "been out a year." He also testified that he was employed when he was taken into custody but gave no reason why he had not made any payment in the year he had been out of prison.

In sum, Iles was given more than ample opportunity to testify, be examined by his own counsel, and to offer evidence but chose not to testify until called upon by the court to confirm the proof offered by the Commonwealth. The record shows that Iles had been employed prior to being taken into custody on the bench warrant. He never asserted, nor is there any reason to even speculate, that he could not have made any payments, as he had agreed, in the year after he was released on parole.

The order of contempt entered by the Grant Circuit Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Karen Shuff Maurer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky