RENDERED:  MAY 10, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0162-MR

THINH NGUYEN                                   APPELLANT


           APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE LAUREN ADAMS OGDEN, JUDGE
                    ACTION NO. 11-CI-502760


TUE TRAN AND COMMONWEALTH
OF KENTUCKY, CABINET FOR
HEALTH AND FAMILY SERVICES                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, COMBS, AND ECKERLE, JUDGES.

ACREE, JUDGE:  Appellant, Thinh Nguyen, appeals the Jefferson Family Court's order holding him in contempt for his repeated failure to abide by the conditions of the marital settlement agreement between himself and Appellee, Tue Tran ("Christy").  He also challenges his subsequent incarceration resulting from his failure to purge himself of contempt.  We affirm.

## BACKGROUND

The history of this case is, to say the least, protracted. Thinh and Christy were married for approximately four years. Their twin sons were born in 2009. The parties, as well as their family members, often invested in residential real estate. Thinh is the owner of Nguyen's Investments, through which Thinh buys and sells homes and transfers title to properties to family members.

Thinh and Christy divorced in 2012. They entered a Marital Settlement Agreement on March 26, 2012, which was incorporated in the family court's April 10, 2012 Decree of Dissolution. Pursuant to the settlement agreement, Thinh and Christy each received three of the residential investment properties. The family court required Thinh to pay all debts associated with the properties Christy received, as well as debts associated with nine other properties deeded to other family members.

Included in these properties were two houses; one on Bluegrass Avenue and another on Guenevere Court, both in Louisville. The Bluegrass Avenue property had been deeded to Thinh's sister. At the time of Thinh and Christy's divorce, the Bluegrass Avenue property was subject to a mortgage with U.S. Bank with a balance of $68,677.90. The house was also subject to an approximate $50,000 home equity line of credit with 5/3 Bank. Both loans were in Christy's name. Subject to the parties' settlement agreement, Thinh was required

to pay the minimum amounts due each month on both loans and to refinance both loans to remove Christy.

Thinh did not pay the monthly payments and did not refinance the loans. The family court ordered Thinh to sell several properties to satisfy these debts associated with the Bluegrass Avenue house. However, he failed to disclose that these other properties were subject to tax liens. The property was transferred to Christy so that she could sell it, but she was unable to do so due to disrepair. After foreclosure, the property sold at auction for $39,163.07, an amount insufficient to pay off either loan. U.S. Bank initiated a collection action against Christy for the $63,953.50 still owed, and 5/3 Bank initiated a collection action against her to collect $44,191.67 still owed.

The Guenevere Court property was deeded to Thinh's parents. Thinh transferred possession from his parents to Christy. Because of the condition of the property, Christy was required to pay $60,644 in repairs and to remedy a foreclosure. She paid this amount out of both her personal bank account and the account of Tran Han Investments, a company of which Christy is a fifty percent shareholder alongside her brother. The Guenevere house was also subject to a tax lien. Like the Bluegrass Avenue property, the Guenevere property was foreclosed upon and sold at auction. The sale proceeds covered the outstanding mortgages on the property, and no proceeds went to Christy.

The family court has on multiple occasions ordered Thinh to produce an accounting of his proceeds from the sale of various properties, but Thinh did not comply. According to Christy's testimony, Thinh regularly purchases property and obtains credit in the name of his businesses, family, and friends. She testified that Thinh acquired over thirty properties since their divorce, and that Thinh spends extravagantly. Thinh did not produce his bank records as the family court directed. Thinh, conversely, testified he only owns one home – on South Arbor Park Drive in Louisville – has no financial resources, is unemployed, and stays home to care for the two children he has with his current girlfriend.

Also pursuant to the parties' settlement agreement, Thinh is required to pay Christy $1,395 in monthly child support. The children live with Christy and rarely see Thinh. Thinh acknowledged he has not paid child support in several years and believed he and Christy had agreed for him to neither see the children nor pay child support. In 2019, the family court told Thinh the child support obligation was still effective, and since that time Thinh has paid less than required.

On February 10, 2022, the family court entered an order reflecting these facts and holding Thinh in contempt of court for his repeated, substantial, and willful failure to complete the requirements imposed upon him by the family court. The family court enabled Thinh to purge himself of contempt on the following conditions: pay Christy $60,644 within 60 days to reimburse her for the debts

resulting from the Guenevere property; satisfy the deficiency judgments on the 5/3 Bank and U.S. Bank loans related to the Bluegrass property within 60 days; and pay Christy child support as required. If Thinh failed to meet these conditions, the family court would order the transfer of the South Arbor Park Drive property to Christy and would consider sentencing Thinh to 180 days' incarceration.

Christy moved the family court to hold Thinh in contempt for his failure to comply with the February 10, 2022 order. Christy also discovered that U.S. Bank and 5/3 Bank had both permanently written off the amounts Christy owed related to the Bluegrass property; because Thinh would be unable to pay the banks for these loans, Christy moved the family court to direct Thinh to pay her these amounts directly or to deed the South Arbor Park property to her. At an August 19, 2022 hearing, the family court sentenced Thinh to 180 days' incarceration, allowing his release if he deeded the South Arbor Park property to Christy. Thinh now appeals.

## ANALYSIS

In this appeal, Thinh argues the family court abused its discretion in multiple ways. He argues it was an abuse of discretion for the family court to direct the transfer of the Arbor Park property to Christy should he fail to purge himself of contempt. He also argues the court abused its discretion in sentencing Thinh to 180 days' incarceration. Additionally, he raises a constitutional challenge

to the family court's ruling, arguing his incarceration violated his right to due process.

Appellate courts review a trial court's contempt order for abuse of discretion, while reviewing factual findings for clear error. *Crandell v. Cabinet for Health and Fam. Servs. ex rel. Dilke*, 642 S.W.3d 686, 689 (Ky. 2022) (quoting *Commonwealth, Cabinet for Health and Fam. Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011)). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). A finding of fact is clearly erroneous if it is unsupported by substantial evidence. *Goshorn v. Wilson*, 372 S.W.3d 436, 439 (Ky. App. 2012) (quoting *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005)). Substantial evidence is "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citing *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)).

"The failure of either party, without good cause, to comply with a provision of a decree or temporary order or injunction, including a provision with respect to visitation or child support shall constitute contempt of court, and the

court shall remedy the failure to comply." KRS[1] 403.240(2). "Good cause" in this context includes "mutual consent of the parties, reasonable belief by either party that there exists the possibility of endangerment to the physical, mental, moral, or emotional health of the child, or endangerment to the physical safety of either party, or extraordinary circumstances as determined by the court." KRS 403.240(3). "[T]he initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order." *Cabinet for Health and Fam. Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011) (citing *Roper v. Roper*, 47 S.W.2d 517 (Ky. 1932)).

However, "[a]lthough the trial court is the finder of fact as to whether an alleged contemnor is able to perform on the underlying judgment, '[t]he power of contempt cannot be used to compel the doing of an impossible act.' " *Crandell*, 642 S.W.3d at 689 (quoting *Lewis v. Lewis*, 875 S.W.2d 862, 864 (Ky. 1993)). Impossibility includes financial inability. *See Clay v. Winn*, 434 S.W.2d 650, 652 (Ky. 1968). The alleged contemnor has the burden to demonstrate such inability. *Dalton v. Dalton*, 367 S.W.2d 840, 842 (Ky. 1963). The contemnor must do so upon clear and convincing evidence. *Ivy*, 353 S.W.3d at 332 (citing *Clay*, 434 S.W.2d 650).

---

[1] Kentucky Revised Statutes.

Christy clearly and convincingly met her burden to demonstrate Thinh failed to satisfy the conditions of the marital settlement agreement. As to the Bluegrass and Guenevere properties, Thinh's failure to satisfy the debts associated with the property resulted in substantial debts and expenditures for Christy. By Thinh's own acknowledgement, he had not paid child support in years prior to 2019; Thinh has not paid his entire child support obligation since the family court advised him in 2019 that his child support obligations were still in effect.

Conversely, Thinh has not demonstrated by clear and convincing evidence that he was unable to comply. As the family court found, Thinh's insistence that he did not have sufficient resources to pay the amounts owed was not supported by the evidence. The family court noted Thinh receives substantial cash as a result of buying and selling real estate. Though Thinh testified he lacks financial resources, Christy testified Thinh spends extravagantly. As the court noted, Thinh failed to produce his bank records and records of real estate sale proceeds when ordered. We cannot say the family court abused its discretion in determining Thinh failed to demonstrate inability to pay debts and child support as required to avoid being held in contempt.

Nor can we say the family court abused its discretion in ordering the transfer of the Arbor Park property to Christy. As Thinh testified, he owns the Arbor Park property. Though the Arbor Park property is subject to a substantial

tax lien, Thinh, at least, has some form of property to apply toward the amounts owed to Christy. The family court did not commit reversible error by directing the transfer of the Arbor Park property to Christy should Thinh fail to purge himself of contempt.

Finally, Thinh argues his due process rights were violated when the family court ordered his incarceration. Contempt is either civil or criminal. *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996) (citing *Gordon v. Commonwealth*, 133 S.W. 206, 208 (1911)). "Civil contempt consists of the failure of one to do something under order of court, generally for the benefit of a party litigant." *Id.* This can include the willful failure to pay ordered child support or to testify as ordered. *Id.* Though jail can be a penalty for civil contempt, "it is said that the contemptuous one carries the keys to the jail in his pocket, because he is entitled to immediate release upon his obedience to the [trial] court's order." *Id.* (citing *Campbell v. Schroering*, 763 S.W.2d 145, 148 (Ky. App. 1988)).

"Criminal contempt is conduct 'which amounts to an obstruction of justice, and which tends to bring the court into disrepute.'" *Id.* (quoting *Gordon*, 133 S.W. at 208). Accordingly, "[i]f the court's purpose is to punish, the sanction is criminal contempt." *Id.* Here, because Thinh is able to purge contempt by transferring the Arbor Park property to Christy, he "carries the keys to the jail in his pocket" and would be free from incarceration upon compliance with the family

court's conditions. *Id.* Thinh was therefore subject to civil, rather than criminal, contempt.

"The conditional nature of imprisonment, based entirely upon the contemnor's continued defiance of [a] court order, justifies holding civil contempt proceedings absent the safeguards of indictment and jury, provided that the usual due process requirements are met." *Blakeman v. Schneider*, 864 S.W.2d 903, 906 (Ky. 1993). In the context of civil contempt, notice and the opportunity to be heard sufficiently satisfy due process requirements. *Cabinet for Health & Fam. Servs. v. J.M.G.*, 475 S.W.3d 600, 615-16 (Ky. 2015).

Here, Thinh had ample opportunity to be heard on the contempt issue. As Christy notes in her brief, Thinh had been warned as many as four times by the family court that his failure to comply could result in jail time. The court held multiple hearings on the issue, including a contempt hearing on July 6, 2022, where Thinh was represented by an attorney and was provided a full opportunity to demonstrate why he was unable to make payments as required. The family court accommodated him, providing him time to try to reach an agreement with Christy. Thinh had further opportunity to be heard at an August 15, 2022 motion hour and at the August 19, 2022 sentencing hearing. And, nowhere does the record reflect that Thinh lacked notice that he was at risk of being held in contempt.

Accordingly, Thinh's due process rights were adequately safeguarded, and the family court did not err in this respect.

## **CONCLUSION**

Based on the foregoing, we affirm the Jefferson Family Court's order holding Thinh in contempt and his subsequent incarceration.

ALL CONCUR.

BRIEF FOR APPELLANT:

Robert Frederick Smith
Prospect, Kentucky

BRIEF FOR APPELLEE:

Sarah Sturgeon Almy
Louisville, Kentucky